**In re Richard L. FIELD and Delores L. Field, Debtors.**

**Richard L. Field and Delores Field, Plaintiffs,**

v.

**ITT FINANCIAL SERVICES, Defendant.**

**Bankruptcy No. 89–00288E.**
**Adv. No. 89–0025.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 16, 1990.

---

Richard W. Roeder, Titusville, Pa., for defendant.

Gary V. Skiba, Erie, Pa., for debtors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Facts and Procedure

Both parties have filed motions for summary judgment, there being no dispute as to the relevant facts in this Chapter 12 proceeding.

The debtors are dairy farmers. ITT Financial Services ("ITT") appears to have a valid lien on the debtors' real estate, equipment, and cattle. The issue is whether ITT has a valid lien on products and proceeds of the cattle as opposed to a lien only upon accounts receivable and whether its lien protects it as to payments it received in which the right to payment arose within the preference period, i.e., within 90 days before the filing of the Chapter 12 petition.

ITT filed a financing statement in 1984 which clearly covered products and proceeds; that financing statement was filed March 23, 1984 and therefore expired on March 23, 1989, about two months before the commencement of the within Chapter 12 case on May 15, 1989. ITT also filed a financing statement in 1987, but it did not cover products and proceeds; it did cover accounts receivable.[1]

It would be expected that ITT would produce a security agreement dated in 1987, which would have been contemporaneous with the 1987 financing statement. It could not do so, however. ITT must therefore rely upon its 1984 security agreement which covered debtors' farm equipment, cattle, products and proceeds thereof, and accounts receivable; ITT also holds a separate 1984 assignment of milk proceeds. ITT has in its possession $10,599.68 in proceeds of debtor's accounts receivable which it has collected within the preference period and shortly after the Chapter 12 filing. Debtors seek to recover the $10,-599.68.

ITT's answer to debtors' complaint sets forth the amount of its claim and the values of various items of collateral which would indicate that ITT is oversecured; if so, payments by the debtors cannot be preferences. However, ITT does not press this argument in its brief and we assume that ITT admits that it is, in fact, undersecured.

### Discussion

The above findings as to the facts somewhat clarify an otherwise confusing background.

---

**1.** The 1987 financing statement showed "ITT Financial Services" of Warren, Ohio as the secured party; the 1984 security agreement showed "ITT Thorp Corporation of Coraopolis, Pennsylvania" as the secured party; the ITT brief asserts that these were different names used by the same entity; to-wit, Aetna Finance Company. The ITT proof of claim asserts the same fact. While debtor asserts that the secured party must establish its claim, we will assume the assertion to be true until challenged by the debtor as an issue. In view of our conclusions on the other merits, the issue is immaterial.

Since there is no effective financing statement perfecting the lien of the security agreement as to products and proceeds, there is no lien thereon. ITT does have a valid perfected lien on debtor's accounts receivable.

Since ITT does not have a perfected lien on products and proceeds, it does not have a continuing lien postpetition under § 552(a) or (b) of the Bankruptcy Code.

■ The 1984 assignment by which the debtors assigned their milk checks to ITT was not an outright assignment, but an assignment for security purposes and as such, is governed by the law relating to secured transactions.

ITT held a valid security interest in debtors' cattle and in debtors' accounts receivable. Debtors customarily did business with Dean Dairy Products Company ("Dean"). When debtors delivered milk to Dean, Dean became obligated to make payment. Pursuant to the assignment, Dean was obligated to make that payment to ITT. Therefore, as soon as debtors delivered milk to Dean, there became an account payable by Dean to the debtors, except that, by virtue of the assignment, the payable was due to ITT. To the extent that Dean's obligation to pay arose outside of the 90 day preference period, there was no preference. But to the extent that Dean's obligation to pay arose within the 90 day preference period, ITT received a preference, for the reason that ITT thereupon acquired a direct right of action against Dean which had not theretofore existed and upon which ITT subsequently received payment.

The record shows the payments received by ITT within the 90 day period and postpetition as follows:

| | |
|---|---|
| 2/27/89 | $ 2,117.52 |
| 3/20/89 | 2,118.86 |
| 4/19/89 | 3,290.74 |
| 5/23/89 | 3,072.56 |
| Total | $10,599.68 |

The record does not show whether the February 27, 1989 payment was made on account of an obligation which arose prior to February 14, 1989 (the 90th day before the May 15, 1989 case filing), in whole or in part. The record must, therefore, be supplemented by ITT if it chooses to attempt to show that the February 27, 1989 payment was on account of a pre-February 14, 1989 delivery of milk to Dean by the debtors.

■ The postpetition payment by Dean to ITT is voidable under § 549 to the extent it is based on a postpetition delivery of milk to Dean, and is voidable as a preference under § 547 to the extent it is based on a prepetition delivery.

The applicability of § 547 to a holder of a prepetition lien on accounts receivable is discussed fully in *In re Northwest Electric Co. of Ohio*, 84 B.R. 400 (Bkrtcy.W.D.Pa. 1988).

An order will be entered, consistent with the above discussion, requiring repayment by ITT of the preference received.